<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PAUL CARCHIETTA, | Civil Action No. 11-cv-7587 (SRC)(CLW) |
| Plaintiff, | |
| vs. | *Document electronically filed* |
| MICHAEL RUSSO, et al. | **OPINION** |
| Defendants. | |

CATHY L. WALDOR, United States Magistrate Judge.

## I.    Introduction

Pending before this Court is a motion by Plaintiff Paul Carchietta ("Plaintiff") to compel the production of Internal Affairs files ("IA files"). (Docket Entry No. 37, "Letter Request"). Defendant Michael Russo ("Russo") opposes the motion.  For the reasons set forth below Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

## II.    Background and Procedural History

Plaintiff filed this complaint on December 29, 2011 and subsequently amended alleging twenty-one violations of his rights under the constitutions of the United States and the State of New Jersey. Counts 1-10 allege various New Jersey Constitutional violations and civil rights violations against Defendant Russo. Counts 12, 13, 14, 20 and 21 allege claims that fellow officers, the Borough of Cliffside Park through acquiescence permitted the alleged wrongdoings of Russo permitting such practice to become practice, custom and usage of the Cliffside Park

Police Department and the Borough of Cliffside Park. (Docket Entry No. 3, "Amended Complaint"). At the time the transaction of events took place Plaintiff resided at 100 Winston Drive, Cliffside Park, New Jersey and subsequently moved to various locations around New York and New Jersey. (Amended Complaint, ¶ 1). Defendant's Russo, Keane, and Grenier are/were members of the Cliffside Park Police Department during the relevant times outlined in the complaint. (Id. at ¶ 2). Defendant's Calabrese and Doe are elected public officials and residents of Cliffside Park. (Id. at ¶ 3). Defendant Eliota Carchietta ("Eliota") is Plaintiff's former spouse. (Id. at ¶ 4).

In August 2008 Eliota accused Plaintiff of assault and filed charges with the Cliffside Police Department. (Id. at ¶ 8). These charges were eventually dropped. (Id. at ¶ 12). The marital relationship continued to deteriorate by the end of 2009 resulting in a separation. (Id. at ¶ 13). Around this time Plaintiff alleges that Russo regularly harassed him during the separation. (Id. at ¶¶ 14-15, 17, 20).

Plaintiff contends that Eliota and Russo were romantically involved based upon a review of cell phone records and eye-witness accounts of Russo entering Eliota's apartment while the pair were separated. (Id. at ¶¶ 26,29). The Plaintiff and Eliota permanently separated in April 2010. (Id. at ¶ 32). Russo allegedly continued to harass Plaintiff. (Id.).

A Motion to Compel for the production of IA files was filed by the Plaintiff on October 12, 2013. (Docket Entry No. 37). Opposition by counsel for Russo on procedural grounds was filed on October 22, 2013 alleging that Plaintiff made an insufficient proffer in his Motion to Compel. (Docket Entry No. 38). Attorney Calo, representing Cliffside Park, Calabrese and Keane took no position. (Docket Entry No. 39).

The Court ordered that the IA files from Cliffside Park be produced for *in camera* review, the files were submitted to the Court on September 5, 2013. This Court promptly reviewed the files and on November 8, 2013 ordered they be turned over to Plaintiff. On November 11, 2013, Mr. Wunsch, attorney for Russo, wrote to the Court asking that the Court reconsider its ruling and permit further briefing. (Docket Entry No. 43).

As a result the Court stayed the November 8 Order pending formal briefing. (Docket Entry No. 44). Russo filed a formal opposition to Plaintiff's request. (Docket Entry No. 45). By way of an Order dated December 26, 2013 the Court permitted Russo's attorney to conduct an *in camera* examination of the IA files. (Docket Entry No. 48). In a letter dated January 30, 2014 Russo supplemented his opposition to Plaintiff's request citing specific reasons as to why the IA files should not be produced. (Docket Entry No. 51). The Court heard oral argument on March 6, 2014. (Docket Entry No. 54).

### III.    The Files

On or about October 15, 2012 Sergeant MacKay of the Cliffside Park Police Department was informed that the FBI was investigating Defendant Russo for use of his position as a police officer to carry on inappropriate relationships with women that have been victims of domestic violence.

On February 5, 2013 Sergeant MacKay was assigned to investigate the same allegations as well as two other allegations of misconduct lodged by former Cliffside Park Police Officer Jonathan Lemkin, which appeared on the former officer's website. Russo was served with the Complaint Notification Letter the same day.

The Plaintiff in this case, Paul Carchietta, had filed an Internal Affairs complaint against Russo on or about April 15, 2010.

- 3 -

The 2013 internal affairs investigation involved five interviews which are the subject of this Motion to Compel. The interviews and investigations shall herein be referred to by the alphabet designations "O"; "N"; "S"; "H" the fifth file and interview has been turned over to Plaintiff and is not the subject of this Motion.

It is significant to note that "S" and "H" were the alleged victims of domestic violence. "H" in 2006, "S" in 2007. Both of the investigations were handled in some part by Russo. Both admit to consensual relationships with Russo. As to "H" the domestic violence complaint initiated in Fairview, New Jersey. "H" became romantically involved with Russo during the pendency of the restraining order, Russo allegedly helped her move to Cliffside Park, and Russo became involved in later restraining order violations by "H's" ex-husband.

The "S" interview and file as stated also stems from a domestic violence complaint lodged by "S" against her live-in boyfriend. Captain (then Detective) Russo was assigned to investigate the complaint, and ultimately testified in Superior Court. According to "S" an intimate relationship ensued between her and Russo.

The files of "N" and "O" offer no relevant information.

## IV. Argument

Plaintiff contends that Russo used his power and position as police captain to harass and intimidate him so that he could engage in a romantic relationship with his wife. (Letter Request, p 1). Plaintiff further contends that Russo's practice of using intimidation by way of his position to access similarly situated women was condoned throughout Cliffside Park Police Department. (Id.). Plaintiff seeks discovery of Russo's IA files because, Plaintiff argues, any investigation into Russo's "abuse of power" to facilitate relationships with female victims could be probative of his claims (Id. at 2). Specifically, Plaintiff argues that these documents could lead to other

witnesses with personal knowledge of Defendant Russo's misconduct. (Docket Entry No. 52, p 2). He advances argument that these files may reveal the manner in which Cliffside Park manages its internal affairs complaints. (Docket Entry No. 59, p.11 "Transcript").

Defendant Russo argues that Plaintiff fails to set forth specific evidence establishing that the IA files are relevant to his claim (Docket Entry No. 45, "Defendant's Opp." p 4). He argues that IA files are cloaked in confidentiality and that allowing Plaintiff to access them would undermine the IA complaint process. (Id. at 3). He further argues that these files are privileged.

On January 28, 2014 counsel for Russo reviewed the IA files at issue pursuant to the Court's order dated December 26, 2013. (Docket Entry No. 48). Following his review, Russo supplemented his opposition to Plaintiff's motion. He additionally argues that only three IA files are relevant as they involve domestic violence complaints. One represents the matter concerning Plaintiff and Eliota. Another originates from Fairview, New Jersey. A third possibly relevant file concerns an unmarried woman.

Russo raises two additional arguments in opposition to Plaintiff's motion: 1) discovery of the IA files would violate the privacy interests of individuals who are not a party to this case; and 2) in each of Defendant Russo's IA investigations he was cleared of any wrongdoing. (Id. at pp 4-5).

## V.    Analysis

### Discovery

Pursuant to FED. R. CIV. P. 26(b)(1) "parties may obtain discovery of any non-privileged matter that is relevant to the party's claim or defense" and the court may order discovery of any matter relevant to the subject matter involved in the action," although "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery

of admissible evidence." *See Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). Additionally, pursuant to FED. R. CIV. P. 26(b)(2)(C), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (1)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (2)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (3)    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The limitation of the relevance standard depends on the facts of each case, and the determination of relevance is within the discretion of the Court. *See Barnes Found.v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D. Pa. 1996). "Courts have construed this rule liberally, creating a broad vista for discovery." *Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J. 2009) (citing *Tele-Radio Sys. Ltd. v. DeForest Elecs.*, Inc., 92 F.R.D. 371, 375 (D.N.J. 1981). "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial." *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation [and] either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Relevancy is determined "in light of the allegations of the complaint, not as to evidentiary admissibility." *Id.* "The party resisting discovery has the burden of clarifying and explaining its objections to provide support therefor." *Tele-Radio Sys. Ltd.*, 92 F.R.D. at 375.

"A discovery request may be denied if, after assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, the District Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Takacs*, 2009 WL 3048471, at *1. "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Id.*

### *Monell* and § 1983 Liability

"When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a police, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburg*, 89 F.3d 966, 971 (3d Cir. 1996); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). "[A]lthough the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. *Id.*; *see also Monell*, 436 U.S. at 694.

"A government policy or custom can be established in two ways. Policy is made when a decision maker possesses final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law." *Beck*, 89 F.3d at 971. "Custom … may also be established by evidence of knowledge and acquiescence." *Id.*

In order "to sustain a § 1983 claim for municipal liability, the plaintiff must simply establish a municipal custom coupled with causation – i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, lead to their injury." *Beck*, 89 F.3d at 972. "[P]roof of the existence of an unlawful policy or custom alone is insufficient to maintain a § 1983 action…[as] the plaintiff bears the burden of proving that the municipal practice was the proximate cause of the injuries suffered." *Id*. at 972. "To establish the necessary causation, a plaintiff must demonstrate a 'plausible nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon*, 915 F.2d 845,850-51 (3d Cir. 1991). "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Id*. at 851. Thus, "if the [municipality] is shown to have tolerated known misconduct by police officers, the issue whether the [municipality's] inaction contributed to the individual officers' decision … [to act] unlawfully … is a question of fact for the jury. *Id*. "[A] municipality's failure to act, once it [is] on notice that its procedures [are] constitutionally deficient, create[s] a fact question respecting causation. *Id*.

"A state official may also be held responsible under § 1983 for failing to exercise supervisory authority, but only if that official has exhibited deliberate indifference to the plight of the person deprived." *Remillard v. City of Egg Harbor City*, 424 F. Supp. 2d 766, 772  (3d Cir. 1990). "Accordingly, a plaintiff asserting a failure to supervise claim must not only identify a specific supervisor practice that the defendant failed to employ, he must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior patter of similar

incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval." *Id.*

**Governmental Privilege**

"The application of a privilege in federal court is governed by FED. R. EVID. 501 which provides that in federal question cases, the federal common law of privilege applies rather than the state law of privilege." *Torres v. Kuzniasz*, 936 F. Supp. 1201, 1207-08 (D.N.J. 1996). A federal court sitting in a non-diversity case may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state." *Id.*; *see also D'Oench, Duhme & Co. v Federal Deposit Insur. Corp.*, 315 U.S. 447, 471 (1942). "When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply." *Id.* at 1208; *see also Gannet v. First Nat'l State Bank of New Jersey*, 546 F.2d 1072, 1076 (3d Cir. 1976), *cert. denied*, 431 U.S. 954 (1977). "Where…the complaint alleged both a federal question claim and pendent state law claims, the federal common law of privilege applies to all claims." *Id.*; *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 103 (3d Cir. 1982); *Wei v. Bodner*, 127 F.R.D. 91 (D.N.J. 1989).

"There appears to be no continuity among federal courts regarding what privileges can be invoked by law enforcement officials when defending against a civil rights claim. Federal Courts, when analyzing privilege issues in civil rights claims, may look to state law to determine what interests have inspired state privilege laws and the importance given to these interests by the state legislatures." *Id.*; *see also Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Ca.

1987). "[I]n light of the policies driving civil rights statutes, state law is necessarily not determinative of what evidence is discoverable, but rather is there to guide the courts in their assessment of the interests of the government" because it "would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state and local authorities." *Id.*; *Kelly*, 114 F.R.D. at 656.

"A claim of governmental privilege in a § 1983 case must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Scouler v. Craig*, 116 F.R.D.  494, 496 (D.N.J. 1987); *see also Wood v. Breier*, 54 F.R.D. 7, 13 (E.D. Wis. 1972); *Crawford v. Dominic*, 469 F. Supp. 260, 264 (E.D. Pa. 1979). The following factors ought be considered in "balancing the protection of police files against the rights of a civil rights claimant:"

(1) the extent to which disclosure will discourage citizens from giving the government information;

(2) the impact upon such person of having their identities disclosed;

(3) the degree to which governmental self-evaluation and program improvement will be chilled by disclosure;

(4) whether the information sought is factual or evaluative;

(5) whether the party seeking discovery is or may become a defendant in a criminal proceeding stemming from the incident in question;

(6) whether the police investigation has been completed;

(7) whether departmental disciplinary proceedings have arisen or may arise form the investigation

(8) whether the plaintiff's suit is brought in good faith;

(9) whether the information sought is available through other sources; [and]

(10) the importance of the information sought to the plaintiff's case.

*Id.* at 496; *see also Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973); *Torres*, 396 F. Supp. at 1209-10. [T]he weightiest factor is the importance of the information to the plaintiff's case." *Id.*; *see also Crawford*, 496 F. Supp. at 263.

"[A] claim of executive or law enforcement privilege must be asserted by the head of the agency claiming the privilege after he or she has personally reviewed the material and submitted precise and certain reasons for preserving the confidentiality of the communications." *Torres*, 396 F. Supp. at 1210; *see also United State v. O'Neill*, 619 F.2d at 226. "Some courts insist upon specific items that must be included in this affidavit" among which are:

(1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including states taken to assure preservation of the confidentiality of the material);

(2) a statement that the official has personally reviewed the material in question;

(3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer;

(4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest; and

(5) a projection of how much harm would be done to the threated interests if the disclosure were made.

*Id.*; *see also Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly*, 114 F.R.D. at 670.

"The balancing test for determining whether the law enforcement privilege applies must be conducted with an eye towards disclosure." *Id.* "Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for the truth." *Id.* at 1210-11; *see also United States v. Nixon*, 418 U.S. 683, 710 (1974); *Wei*, 127 F.R.D. at 96; *Miller*, 141 F.R.D. at 300.

In this case counsel for Defendant Russo claimed a non-specific right to privilege alleging the privacy interests of the interviewees in the internal affairs investigation. (Docket Entry No. 51, p. 4). As case law dictates disclosure weighs heavily in the balance. *Scouler*, 116 F.R.D. at 496. The Court further acknowledges that the Attorney General Guidelines state as follows:

> The nature and source of internal allegations, the progress of internal affairs investigations, and the resulting materials are confidential information. The contents of the internal investigation case files shall be retained in the internal affairs unit and clearly marked as confidential. The information and records of an internal investigation shall only be released under the following limited circumstances… Upon a court order.

This Court finds the release of these files, that is the "S" and "H" files, is necessary and essential to fair pursuit of Plaintiff's allegations and ultimately his case. The balance of protecting internal affairs files against Plaintiff's right to assert a civil rights claims weighs in favor of Plaintiff. *Dawson v. Ocean Twp.*, 2011 U.S. Dist. LEXIS 25545 (D.N.J. 2011).

Russo's privilege argument is denied since proper assertion of the privilege did not occur. "A claim asserting the law enforcement privilege must be made by the head of the agency making the privilege after that person has personally reviewed the material and served 'precise and certain reasons for preserving' the confidentiality of the communications." *Groark v. Timek*, 2013 U.S. Dist. LEXIS 168716 (D.N.J. 2013) (citing *O'Neill*, 619 F.2d at 226). "Broad invocations of a privilege are unacceptable." *O'Neill*, 619 F.2d at 225. The condition precedent has not been fulfilled.

## VI.    Conclusion

This Court has weighed the *Frankenhauser* factors, and finds that although factor (2) the impact upon such persons of having their identities disclosed, carries substantial weight, as

argued by counsel for Russo, the protection of a confidentiality order and the release of these materials for attorney's eyes only will go a long way to protect these individuals from loss of privacy. The remaining *Frankenhauser* factors weigh more heavily towards disclosing these two files. There is no doubt that this information may lead to discoverable evidence, and is therefore of importance to Plaintiff's allegations.

It is of no moment that the Cliffside Park Police Department did not sustain allegations by Carchietta in the 2010 investigation, or that no charges were filed or sustained in the 2013 internal investigation. *Worrall v. City of Atlantic City*, 2013 WL 4500583 (D.N.J. 2013); *Groark v. Timek*, 2013 U.S. Dist. LEXIS 168716.

For the reasons set forth above, Plaintiff's Motion is hereby **GRANTED** as to files pertaining to "S" and "H"; the Motion is hereby **DENIED** as to the files pertaining to "N" and "O" as the Court determined they are not relevant. All other internal affairs materials shall be turned over with the redaction of all references to "N" and "O." An appropriate Order shall follow.

**Dated**: May 6, 2014                    s/ Cathy L. Waldor
                                          **CATHY L.WALDOR**
                                          **UNITED STATES MAGISTRATE JUDGE**